IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THEODORE SOMACH and,** | : | |
| **ROMTECH EOOD,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | **NO. 22-2071** |
| **CLEOPATRA RECORDS, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                                                        **September 19, 2023**

Plaintiffs Theodore Somach (doing business as Entertainment USA) and Romtech Eood, (collectively "Plaintiffs") bring this action for intentional interference with prospective economic advantage against Defendant Cleopatra Records, Inc. ("Defendant"). According to Plaintiffs, Defendant made knowingly false claims of federal copyright infringement against Plaintiffs with intent to damage their business relationships with Amazon and other third parties in the music media marketplace. Plaintiffs maintain that, at all relevant times, the content Plaintiffs were selling was licensed and no copyright infringement was taking place.

Before me is Defendant's Motion pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. Because this Court has no personal jurisdiction over Defendant, I will grant Defendant's Motion on that ground and dismiss this case.

1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the Amended Complaint and analyzed in the light most favorable to the Plaintiffs.[1]

Plaintiff Romtech Eood is a digital marketing, content licensing, and information technology corporation headquartered in Bulgaria.  Plaintiff Theodore Somach is an individual who formerly resided in Delaware Country, Pennsylvania, and currently resides in the European Union.  The music content now licensed by Plaintiff Somach was previously owned by his former Pennsylvania corporations TWS Holdings LLC and Entertainment Distribution Group Inc.  Defendant Cleopatra Records, Inc. is a California corporation incorporated and headquartered in Los Angeles, California.  Defendant is a competitor to Plaintiffs in the music content industry.  (Am. Compl. ¶¶ 8–10.)

On March 27, 2022, online retailer Amazon notified Plaintiffs that it had removed one of Plaintiffs' music listings based on receipt of a Digital Millennium Copyright Act ("DCMA")[2] copyright claim against Plaintiffs.  The claim asserted that Plaintiffs were using unauthorized and unlicensed music content and, thus, had infringed upon the intellectual property rights of the copyright holder.  Plaintiffs learned that Defendant had not done a "test buy" to verify the validity of the product, or "engage[d] in any other due diligence," such as contacting the Plaintiffs to determine whether they had a license for the music.  (Id. ¶¶ 18–19.)

---

[1]   In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

[2]   17 U.S.C. § 1201 et seq.

That same day, Plaintiff Somach emailed Defendant to notify it that the content in controversy was lawfully licensed from an authorized distributor of Defendant's content. The following day, on March 28, 2022, the president of the authorized distributor also contacted Defendant to confirm that Plaintiffs were lawfully using the content. (Id. ¶¶ 20-21.)

According to Plaintiffs, Defendant was evasive in responding to emails and did not dispute the statements made by either Plaintiffs or the authorized distributor. Still, Defendant maintained that it owned the intellectual property rights to the content. (Id. ¶ 22.)

On April 8, 2022, Plaintiffs' counsel contacted Defendant requesting that Defendant retract its copyright infringement complaint to Amazon. Defendant responded and claimed it had already done so on March 28, 2022. According to Plaintiffs, however, Defendant had not retracted its infringement complaint. Plaintiffs later contacted Amazon directly and were able to remove the copyright infringement claim on their own. (Id. ¶¶ 24–25, 27.)

Plaintiffs contend the copyright claim and subsequent two-week dismissal from the Amazon platform caused them to suffer financial and reputational damages in excess of $75,000. (Id. ¶ 22.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may seek dismissal of a complaint for lack of personal jurisdiction. "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 144 n.1 (3d Cir. 1992). A plaintiff may do so through affidavits or jurisdiction competent evidence

that show sufficient contacts with the forum state to establish personal jurisdiction.[3] <u>De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP</u>, No. 08-cv-0533, 2008 WL 4822033, at *3 (E.D. Pa. Nov. 4, 2008). Such contacts must be established with "reasonable particularity," but need only amount to a *prima facie* case in favor of personal jurisdiction. <u>Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987)). If the plaintiff meets this burden, the defendant must then establish the presence of other considerations that would render jurisdiction unreasonable. <u>De Lage Landen Fin. Servs.</u>, 2008 WL 4822033, at *3 (citing <u>Carteret Sav. Bank v. Shushan</u>, 954 F.2d at 150).

**III. DISCUSSION**

Under Federal Rule of Civil Procedure 4(k)(1)(A), federal courts sitting in diversity can only exercise jurisdiction over a non-resident defendant to the extent permitted by the state's forum laws. See <u>Martin v. Citizens Fin. Group, Inc.</u>, No. 10-cv-260, 2010 WL 3239187, at *3 (E.D. Pa. Aug. 13, 2010). Pennsylvania's long-arm statute allows for Pennsylvania courts to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States … based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); see <u>Mellon Bank</u>, 960 F.2d at 1221 ("The Pennsylvania statute permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process

---

[3] Under this standard, to meet its burden of establishing a prima facie case of jurisdiction, a plaintiff must establish jurisdictional facts through sworn affidavits or other evidence. It may not rely on bare pleadings alone. See <u>Patterson by Patterson v. F.B.I.</u>, 893 F.2d 595, 603—04 (3d Cir. 1990) (citations omitted). Here, Plaintiffs' jurisdictional allegations are included only in their response to Defendant's Motion to Dismiss. They provide no affidavits or other evidence. Nonetheless, even if I were to consider Plaintiffs' unsubstantiated allegations, they would nonetheless fail to establish personal jurisdiction.

clause of the fourteenth amendment."). Therefore, a court need only inquire whether the exercise of personal jurisdiction over the defendant would be constitutional under the Due Process Clause. Mellon Bank, 960 F.2d at 1221.

Pursuant to these constitutional considerations, physical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Instead, personal jurisdiction may be based on either a defendant's general contacts ("general jurisdiction") or his specific contacts ("specific jurisdiction") with the forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). As Defendant is incorporated and headquartered in Los Angeles, California, Plaintiffs agree that this Court does not have general jurisdiction over Defendants and contend only that the exercise of specific personal jurisdiction is proper.

Specific jurisdiction exists where the cause of action is related to or arises out of the defendant's contacts with the forum. IMO Indus., 155 F.3d at 259 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). For the exercise of specific jurisdiction to comply with the Due Process Clause, a plaintiff must satisfy a three-part test. Louis A. Grant, Inc. v. Hurricane Equip., Inc., No. 07-438, 2008 WL 892152, at *3 (W.D. Pa. Apr. 2, 2008). First, the plaintiff needs to show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., 155 F.3d at 259 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Second, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros Nacionales, 466 U.S. at 414. Third, if the first two elements are met, the reviewing court should consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l

5

Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (enumerating the three elements of specific jurisdiction).

In order for a defendant's contacts with the forum to be sufficient under the first factor, they must be intentional, with the defendant purposefully availing itself of the privilege of conducting business in the state. See J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 880 (2011). Requiring that a defendant purposefully avail himself of doing business in the state ensures that he will not be haled into court in a state where his only contacts are "'random,' 'fortuitous,' or 'attenuated.'" Burger King, 471 U.S. at 475 (`985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Although Pennsylvania's long-arm statute includes what is known as a "tort out/harm in" provision, which can extend personal jurisdiction to tortfeasors who "caus[e] harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth," 42 Pa. Cons. Stat. § 5322(a)(4), that alone does not suffice. Even if the long-arm statute extends to an out-of-state tortfeasor, a plaintiff must still demonstrate that the defendant has sufficient minimum contacts with Pennsylvania. Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 201 (3d Cir. 1998).

Under the second element, for the claim "arise out of or relate to" those contacts under the second factor, there must be "a strong relationship among the defendant, the forum, and the litigation." Hepp v. Facebook, 14 F. 4th 204, 208 (3d Cir. 2021) (quoting Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1028 (2021). Whether a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state depends, in part, on the type of claim brought." Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 130 (3d Cir. 2020

In an effort to establish jurisdiction over Defendant here, Plaintiff cites to both Defendant's internet-based contacts and non-internet-based contacts. I find that neither type of contacts, considered separately or collectively, satisfies the personal jurisdiction test.

### A. Internet-Based Contacts

First, Plaintiffs rely heavily on Defendant's internet presence, alleging that Defendant's website allows users to shop for Defendant's products and create an account for "repeat purchases." The website lists "an active direct partnership" with a company located in-state that claims to be an "exclusive distributor" of Defendant's records. (Pls.' Resp. Opp'n 10; Am. Compl. ¶ 13.) In addition, Plaintiffs claim that Defendant's Amazon Marketplace is "readily available to the residents of Pennsylvania." (Pls.' Resp. at 10.)

Such internet-based contacts are insufficient to allow the exercise of personal jurisdiction. In Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit stressed that the propriety of exercising personal jurisdiction based on the operation of an Internet web site depends where on a sliding scale of commercial interactivity the website falls. Id. at 452 (citing Zippo Mfg Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)). Where the defendant is clearly doing business in the forum state through its web site, and where the claim relates to or arises out of use of the web site, personal jurisdiction exists. Toys "R" Us, 318 F.3d at 452. But "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." Corigliano v. Classic Motor, Inc., 611 F. App'x 77, 80 (3d Cir. 2015) (quoting Toys "R" Us, 318 F.3d at 454). Stated

differently, "there must be 'something more' . . . to demonstrate that the defendant directed its activity towards the forum state." Desktop Techs., Inc. v. Colorworks Reprod. & Design, No. 98-cv-5029, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999).

Here, Plaintiffs rely heavily on the fact that Defendant conducts Internet commerce, both through its website and through Amazon marketplace. Defendant's website lists its music artists and allows customers to shop for and order music-related items for delivery in multiple states, including Pennsylvania. Plaintiffs, however, have not shown that a single Pennsylvania resident actually transacted with Defendant through these forums. Nor has Plaintiff pointed to any evidence that Defendant directly targeted its web site to Pennsylvania, knowingly interacted with Pennsylvania residents via its web site, or had other "related contacts" with Pennsylvania. Indeed, even to the extent Defendant had done some business with Pennsylvania residents, Plaintiff would have to show that these were not the kind of "fortuitous," "random," and "attenuated" contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction. Id. at 545-55. In short, Plaintiff cannot show how Defendant "purposefully availed" itself of the privilege of conducting business in Pennsylvania through its internet commerce.

Even if these contacts were sufficient, Plaintiffs' claims do not arise out of Defendant's internet activity. Plaintiffs argue that Defendant sells products on Amazon to residents of Pennsylvania and Defendant's Amazon-based sales activities are directly related to the present dispute "because [Defendant] filed a complaint against Plaintiffs on Amazon seeking to protect what [Defendant] (falsely) believed were its copyrighted products sold on Amazon." (Pls.' Resp. Opp'n 10.) But Plaintiffs' attempted connection between the Amazon sales and the present claims is tenuous at best. Defendant sells products on Amazon without any specific targeting of Pennsylvania residents or the state itself. The mere fact that the music content that Plaintiff was

accused of infringing was sold by Defendant on Amazon and that Defendant contacted Amazon to report the infringement does not allow any reasonable inference that Plaintiff's intentional interference claim arose out of purposeful conduct aimed at Pennsylvania.

### B. Non-Internet Based Contacts

Plaintiffs also rely on Defendant's non-internet-based contacts, contending that Defendant targeted and availed itself of the privilege of conducting business in Pennsylvania, thus constituting the "something more" contemplated by the Third Circuit Toys "R" Us.  Plaintiffs assert that Defendant has done business in the past and presently does business with companies located within Pennsylvania, including MVD Entertainment Group ("MVD"), a music industry company in Pennsylvania.  Defendant's website lists an active direct partnership with MVD, who is also an exclusive distributor of Defendant's products.  Plaintiff also notes that Defendant is a record label for and sells records of several music acts in Philadelphia and Pittsburgh.

Such contacts could potentially suffice to establish minimum contacts.  "When a defendant has deliberately engaged in significant activities or created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." Nittany Oil Co. v. Govt. Servs. Corp., 2014 WL 12691613, at *5 (M.D. Pa. Jan. 27, 2014) (internal citations omitted) (quoting Burger King, 471 U.S. at 474, 475–76).

Nonetheless, Plaintiffs' claims do not arise out of or relate to these contacts, as required by the second element of the personal jurisdiction test.  Defendant's contracts with Pennsylvania entities are wholly unrelated to the dispute at issue.  These entities are not parties to this action, nor did they have any involvement in the interactions between Plaintiffs and Defendant.  As such, Plaintiffs' claims cannot be said to "arise out of" those contacts.

## IV. CONCLUSION

As Plaintiffs have failed to produce any evidence establishing that Defendant has minimum contacts with Pennsylvania out of which Plaintiffs' claims arose, I decline to find personal jurisdiction over Defendant. Accordingly, I will dismiss the Complaint in its entirety.

An order follows.